THOMAS *against* WOODS.

Thomas
v.
Woods.

COVENANT, tried at the Washington circuit, July 15th, 1823, before WALWORTH, C. Judge. The declaration stated that on the 8th day of February, 1809, one Joshua Streeter and Adah his wife, for $2400, mortgaged to the defendant, certain premises to secure the payment of $1200, and interest, according to the condition of a certain bond, executed therewith by Streeter; that afterwards, on the 27th day of August, 1810, the defendant assigned the mortgage to the plaintiff, in which assignment it was agreed by the defendant, that in case the plaintiff should not be able to procure or enforce the payment of the money secured by the mortgage and bond, *by due process of law*, the defendant should stand accountable to the plaintiff for such sum or sums of money as should remain due, in manner and at the several times specified in the bond.

The declaration then averred, 1. That the bond was dated the same day and year with the mortgage, and conditioned to pay $1200, with interest, to commence from the first day of April, thereafter, as follows : $500 in five years from the first day of March then next, $400 in nine years

*Margin note:* W. assigned a bond and mortgage, payable by instalments, with interest annually, to T. and covenanted that if T. should not be able to procure and enforce payment at the times, and in the manner therein specified, *by due process of law*, W. would be accountable to him for what should remain due. The first instalment became due March 1, 1814; but T. did not sue the mortgagor until after the next May term, when

certain interest had been in arrear for several years. The suit was pursued to judgment and a *fi. fa.* and an alias *fi. fa.* returned *nulla bona*, &c. and in the meantime, T. foreclosed the mortgage, which still left a balance unpaid, including the interest in arrear; and from the evidence, it appeared probable that the mortgagor had been unable to pay this balance before and ever since the instalment became due; in an action by T. against W. *held*, that T. should not recover the interest in arrear for several years, this being forfeited by delay; but that he might recover the residue; suffering a term to elapse after it fell due, not being an unreasonable delay as to this, under all the circumstances of the case.

One covenants to pay a debt, if it cannot be collected of another by *due process of law* ; it is a compliance with the condition, if the covenantee exert reasonable diligence to collect, under all the circumstances of the case; and if he suffer a term to elapse after the debt falls due without suit, it being apparent that the covenantor has sustained no injury by the delay, he is liable. Nor is it necessary to issue a *ca. sa.* against the principal debtor, if it be apparent that it would be of no avail.

It is enough that the covenantor have notice of the failure to collect after due process of law. There is no need of a demand or request.

Otherwise, it seems, if the covenant be to pay *on request*, expressly.

In an action on such a covenant, averring notice, the defendant must deny this by plea, or it will be taken as admitted upon the record.

A plea of *non est factum* puts in issue the execution of a deed only. All other material averments in the declaration are admitted.

from the first day of March then next, and the remaining sum of $300, in thirteen years from the first day of March then next, and the interest on the whole sum, or any such sum as should from time to time remain due of the $1200, annually, on the first day of March, in each year; the first interest to be paid on the 1st day of March, 1810.   2. That on the first day of March, 1814, the sum of $913 became due and was unpaid; and the plaintiff being unable to procure payment without suit, caused a suit to be commenced in the Supreme Court, on the bond against Streeter, in the name of the defendant, and in October term, 1814, obtained judgment for $2400 of debt, and 24 67 costs, issued a *testatum fieri facias*, to the Sheriff of the county of Washington, to which he returned that Streeter had not any goods or chattels, lands or tenements, in his bailiwick, whereof he could cause to be made the debt and damages, or any part thereof.   3. That the plaintiff being unable to procure payment of the mortgage, foreclosed it; and on the 30th day of December, 1814, sold the premises to John P. Reynolds for $905, being the highest sum bid; that the costs and charges of sale were $50 84, and deducting this together with the costs of obtaining the judgment from $905, there remained $829 49 to be applied on the mortgage.   4. That on the first day of March, 1818, there became due on the bond and mortgage $430 20, over and above the $829 49, which being unpaid, an *alias testatum fieri facias*, was issued on the judgment, to the Sheriff of the county of Washington, who returned that Streeter had not any goods or chattels, lands or tenements in his bailiwick, whereof he could cause to be made the debt and damages, or any part thereof.   5. That Streeter is insolvent, and has been so since the first day of March, 1814.   6. That the defendant had notice of the proceedings against Streeter and of his insolvency.

To this declaration the defendant pleaded, 1. That the assignment was not his deed; 2. That on the first day of March, 1814, Streeter was not insolvent, but from thence hitherto was solvent, and able to pay all sums of money as they fell due, according to the condition of the bond; 3. The same; 4. That the plaintiff might have procured and en

forced payment of the sums of money on the bond and mortgage by due process of law.

On the trial, the plaintiff proved the mortgage and bond, upon which there were the following endorsements of payments:

| | | |
|---|---|---|
| 16th June, 1810, | . . . . | $60 00 |
| 22d September, 1810, | . . . | 16 64 |
| 23d April, 1811, | . . . . | 91 00 |
| 1st April, 1813, | . . . . . | 84 00 |
| | | $251 64 |

The assignment, foreclosure, judgment, the several writs of *fi. fa.* and returns set forth in declaring, being also proved, (the memorandum of the judgment record being of August term, 1814,) the plaintiff rested; and the defendant moved for a nonsuit, objecting that the plaintiff should have proved notice of Streeter's default, and a demand of payment, to which the plaintiff's counsel answered, that it was averred in the declaration, and not denied by the plea. The defendant also insisted, that a suit should have been brought for the default in payment of a part of the interest in 1811, thirty-six cents, the whole in 1812, and that a suit for the instalment due in March, 1814, should have been commenced before May term. The Court reserved the questions, and refused the nonsuit.

Ebenezer Russell, a witness on the part of the defendant, testified that Joshua Streeter had been deputy Sheriff and Jailer of the county of Washington, in the town of Salem, for several years past; that the witness, as treasurer of the county of Washington, paid him on the

| | | | |
|---|---|---|---|
| 2d February, 1815, | . . . . | $12 34 |
| 10th " 1816, | . . . . | 644 67 |
| 18th " 1817, | . . . . | 801 73 |
| 23d September, 1818, | . . . | 1151 64 |
| 18th January, 1819, | . . . | 611 75 |
| 23d March, 1820, | . . . . | 706 16 |
| 1st February, 1821, | . . . | 525 71 |
| | | $4628 82 |

That the above sums were audited to Streeter, by the supervisors of the county of Washington, for keeping the prisoners during those years, and some little repairs to the jail; that a very small part of it was for services rendered the county as constable; that Streeter frequently drew upon the witness as treasurer before he was entitled to receive the amount audited, and the witness paid such drafts on the credit of the fund; and he did not hesitate to advance two or three hundred dollars before the amount was audited, and when Streeter became entitled to receive the amount audited, such drafts were accepted by him, and his receipt taken for the whole amount audited for the year; that in 1816 or 1817, he advanced to John Beaty about 600 dollars for Streeter, which was due for provisions furnished him for the prisoners, and some money.

John Doty, a witness for the plaintiff, testified that he had been acquainted with Joshua Streeter for some time; that as early at 1814, he was unable to pay his debts; that he was his (witness') deputy Sheriff for many years; did not know of his owning any real property since 1811; that since 1814, he has had but a trifling personal property, and that generally covered by execution; that he had no means of supporting the prisoners except by the money paid him from the county; that in 1811, if he had been prosecuted for $70 or $80, it might have been collected; that in 1814, if he had been prosecuted for $400 or $500, it could not have been collected; had known of judgments against him since 1812 or 1813, the executions against him previous to 1820 were generally arranged, except one in favor of Barney of about $100, which was obtained as early as 1814 or 1815, which had not been paid; but he did not know that any execution was issued on it. At the time Streeter was in the receipt of the money from the treasurer of the county of Washington, which was necessary for the support of the prisoners in jail, he was the deputy and jailer of the witness, and was in the receipt of considerable sums of money for fees.

Hiram Lawrence, a witness for the defendant, testified, that in the years 1813, 1814 and 1815, he should think a judgment of about $100, might have been collected of Stree-

ter; that he could not recollect when he returned from Philadelphia, after driving the last horses; but since that time he had been reputed insolvent; that before 1814, the witness held a note against him of about $150, which witness sold to one Todd, and guaranteed the payment; that Todd sued Streeter on the note and obtained judgment; and an execution was issued after the sale on the mortgage, and he understood Todd got the money. This was all the knowledge witness had of the payment, except that he had never been called on by Todd upon his guaranty.

Zacheus Atwood, a witness for the plaintiff, testified that he had known Streeter for 19 years; that he went to Philadelphia with a drove of horses previous to the last war, and that from that time he has been reputed to be insolvent; that he has had but little personal property since then; that in 1814 he had two horses, and afterwards he had two in his possession for some years; he kept the jail, and received much money in the course of his business.

Jesse L. Billings, a witness for the plaintiff, testified that Streeter went to Philadelphia with the last drove of horses, previous to 1815, and he thinks it was in 1811; and on his return, it was reported that he lost his pocket book and the money, and from that time he was reputed insolvent. If judgment on the bond had been obtained in August term, instead of October term, 1814, and a *ca. sa.* had been issued after a *fi. fa.* he thinks the debt could not have been collected.

A verdict was taken for the plaintiff, by consent, for $586 86 subject to the opinion of the Supreme Court on all the questions arising upon the case.

*J. Crary*, for the plaintiff, opened the cause. After stating the facts, he cited *Ten Eyck* v. *Tibbets*, (1 Caines' Rep. 443.) He said the plaintiff has a right to recover the whole sum yet due on the bond and mortgage. There has been no neglect which amounts to a forfeiture of the whole or any part. *Due process of law* means no more than commencing a suit, and following it to judgment. To shield

himself from paying pursuant to his guaranty, the defen-dant should show a loss by our neglect. This could no, be, for Streeter was insolvent throughout; and there could be no loss by an omission to sue. But there has been no omission. We proceeded at the very first moment that we could do it with effect. Woods guaranteed the payment of the interest, and the several instalments from time to time as they fell due. Will it be said a term intervened between the money falling due and a suit brought? The answer is, that Streeter was never worth one dollar.

*S. Stevens & D. Russell,* contra. Whether Streeter was solvent or insolvent is wholly immaterial. The plaintiff was bound to proceed diligently under the covenant, as a condition to any claim upon the defendant. It is not for the plaintiff to say, under this covenant, whether it was incumbent upon him to proceed. He had no right to judge of the defendant's ability: no discretion in the business. An instalment fell due in March, 1814, but no suit was brought till after May term. Here, then, was the loss of a term; and according to both the English cases, and those recently decided by this Court, the whole claim was forfeited. The condition goes to the whole sum; even a failure as to the interest is enough. (*Rees* v. *Berrington,* 2 Ves. Jun. 540. *Nisbet* v. *Smith,* 2 Bro. Ch. Rep. 578–9. *Ex parte Smith,* 3 id. 3, 4. *Moakley* v. *Riggs,* 19 John. Rep. 69, 72. *Kies* v. *Tifft,* 1 Cowen's Rep. 98. *Straton* v. *Rastall,* 2 T. R. 366, 370. *Darbyshire* v. *Parker,* 6 East, 3, 10.) Some of these cases, it is true, relate to sureties, and the defendant is no more than a surety.

Again; notice and demand of payment were necessary. The defendant was liable to pay only on the default of the mortgagor, of which notice should be given. (*Morris* v. *Kirke,* Cro. Eliz. 73–4. *Devenly* v. *Welbore,* id. 85. *Obaston* v. *Garton,* id. 91. *Applethwart* v. *Nortley,* id. 229. *The case of an Hostler,* Yelv. 66. 1 Saund. 33, *n.* 2. *Selman* v. *King,* Cro. Jac. 183. *Bradley* v. *Toder,* id. 228–9. *Hill* v. *Wade,* id. 523. *Rumball* v. *Ball,* 10 Mod. 38.) The defendant was not the original debtor. This is always a

reason why he should have notice. His undertaking is collateral. (1 Dunl. Pr. 262. *Ernst* v. *Bartle*, 1 John. Cas. 319, 327. *Bowdell* v. *Parsons*, 10 East, 359.) It may be said, as it was at the trial, that notice is averred, and not denied ; but notice alone is not competent. There should have been a demand.

Again ; the verdict is for too much. In casting interest, small payments, less than the interest due at the time, have been deducted when paid, and the interest cast on the balance. (*Connecticut* v. *Jackson*, 1 John. Ch. Rep. 13. *Stoughton* v. *Lynch*, 2 id. 209.)

Another objection is, that though the plaintiff was, by the legal effect of the covenant, bound to proceed at his own costs, we are charged with these.

The plaintiff should not only have proceeded by *fi. fa.* but this should have been followed up by a *ca. sa.* The process should have been complete. There was no way of testing the defendant's ability, but by a rigid course of execution.

*Crary*, in reply. We aver notice of all our proceedings to Woods ; the precise balance or deficiency is set forth ; and notice of this is included in the averment. This is not denied by plea, and therefore stands admitted upon the record. An actual demand was not necessary. It was the defendant's duty to pay on learning the extent of the failure. *Non est factum*, and Streeter's insolvency only, are the issues. Every material averment, not denied, is admitted. (*Gardner* v. *Gardner*, 10 John. Rep. 47. Tidd. Pr. 593. Peak. Ev. 266.)

As to the objection of laches, it certainly can have no weight. At all events, it cannot extend beyond the particular sum or instalment which was the subject of the neglect. This is settled by the case cited of *Ten Eyck* v. *Tibbets*, (1 Caines' Rep. 443.) In that case, one entire instalment was not prosecuted for at all ; and the Court presumed it paid.

But I repeat, we are confined to no particular time in commencing our suit. *Due process of law* means a suit commenced and carried on to judgment, generally. The words

or sense denote no particular time at which this is to be done. If the business is managed prudently, the trust on our part has been properly executed, and the defendant has no right to complain. It was in the plaintiff's discretion whether he would go to a *ca. sa.* Woods gave no directions to have this extreme remedy tried; and without some father act or agreement on the part of Woods, such a step would have endangered our rights. Had we committed the debtor in execution, this would have extinguished the demand; and Woods might have pleaded it in dis charge of an action against him. As to the objection tha, costs are included, it is true only as to those of foreclosure. We have defrayed the costs of the action ourselves.

WOODWORTH, J. The defendant assigned to the plaintiff a bond and mortgage against Joshua Streeter; and covenanted, that in case the plaintiff should not be able to procure or enforce payment, at the times and in the manner therein specified, *by due process of law*, the defendant would be accountable to him for such sum or sums of money as should remain due.

The bond bears date the 8th February, 1809; and is conditioned for the payment of $1200, with interest, to commence the 1st April thereafter; $500, payable March 1st, 1814; $400, on the 1st March, 1818; and $300, March 1st, 1822: the interest payable annually on the 1st March in each year.

This action is commenced to recover the balance of principal and interest due on the 1st March, 1818. The declaration avers, that on the 1st March, 1814, $913 became due; that a suit was commenced against Streeter in the Supreme Court, and judgment obtained in October term, 1814; that a *testatum fieri facias* issued to the Sheriff of Washington, where Streeter resided, who returned that the defendant had no goods or chattels, lands or tenements. It also avers, that the plaintiff foreclosed the mortgage, and sold the mortgaged premises, December 30, 1814, for $905; and after deducting $50 84 for costs, there remained $829 49 to be applied to the mortgage. The next averment states, that on the 1st March, 1818, $420 30 became due, over and

above the sum before received, and that the plaintiff issued an *alias fieri facias* to the same county, which was returned in like manner as the first. The declaration then alleges that Streeter was insolvent, and had been so since March 1st, 1814, and that the defendant had notice of the proceedings against him, and of his insolvency.

The defendant pleaded *non est factum*, and that the plaintiff might have enforced payment, by due process of law, and took issue as to the insolvency of Streeter.

The verdict was taken, by consent, for $586 86, subject to the opinion of the Court, the amount to be reduced if necessary to such sum as the plaintiff is entitled to recover.

At the trial, the bond was given in evidence; and by the endorsements on the back, it appears that the interest for 1810, 1811 and 1813, except 36 cents, was received; but there is no evidence that the interest for 1812 had been paid by Streeter, or that any prosecution was commenced previous to 1814. For this omission, the defendant contends that the plaintiff has not complied with the contract, and consequently, that he is exonerated. There is no doubt that the defendant is not liable for the interest of 1812, by reason of the neglect to prosecute for upwards of two years thereafter. When this interest fell due, the plaintiff, to whom it was payable, had a right to receive it from Streeter, or remit it to him, or, if he chose, to forbear a prosecution, and thereby incur the risk of loss, by exonerating the defendant to that extent. He was authorized so to do, within the fair construction of the assignment. It is immaterial to the defendant, provided no claim for its payment can be enforced against him. It would be a forced and unnatural construction, to suppose the parties intended, that nothing short of actual payment should suspend a suit against Streeter, although the same object was attained, so far as the defendant is concerned, if the plaintiff by any other act relinquished his hold upon him. I apprehend this objection cannot be supported upon any principle of aw or justice.

In *Ten Eyck* v. *Tibbets*, (1 Caines, 427,) the bond assigned was payable by instalments; the plaintiffs cove-

nanted to use all due diligence, and to take all legal measures by prosecution at law. The first instalment was payable May 1, 1798, but no action was commenced until May 1, 1799, when the second became due. In the action to recover against the assignors, no notice was taken of the first instalment; the plaintiffs did not claim to recover it of the defendants; but among other things it was urged by them, that it was the duty of the plaintiffs, to have proceeded, and that if the instalment had not been paid or sued for, the plaintiffs lost all right to look to the defendants for any future sums. The objection was not regarded. Thompson, Justice, says, "it is a sufficient answer to say, that no demand is made of the defendants for that instalment; any delay or laches of the plaintiffs in this respect can only be alleged when a demand is made upon the defendants." On this point Radcliff, Justice, concurred, and Lewis, Chief Justice, seems not to have noticed the objection.

The action against Streeter was not commenced until May vacation, 1814. It is contended that it ought to have been commenced previous to that term. By the terms "*due process of law*," I understand all ordinary legal measures, prosecuted with good faith. In considering the question of due diligence, I think it relevant to look at the testimony relative to Streeter's responsibility in April, 1814. He had been Jailer and Deputy Sheriff a number of years. Sheriff Doty testified that as early as 1814, he was unable to pay his debts; he did not know that he owned any real estate; since that time he has had but trifling personal property, and that *generally* covered by execution; and that he had no other means of supporting the prisoners, than with the money paid him by the county. One witness thought that in 1814 and 1815 a judgment of $100 might have been collected; but several other witnesses stated that he had been reputed to be insolvent from the time he went to Philadelphia with a drove of horses, which appeared to be previous to the last war. Another witness thought if the judgment had been obtained in August term, instead of October, and a *ca. sa.* issued after a *fi. fa.* the debt could not have been collected.

These facts render it highly probable, that had the suit been commenced on the 1st April, 1814, the result would have been the same. Do they not show reasonable diligence in point of time? Every question of due diligence must be decided by a view of all the facts and circumstances. What would be a lach in one case, might be reasonable diligence in another. It will not be contended that due diligence requires a prosecution to be commenced, in every case on the day the money is payable. If a party intends that, he will guard his contract as in the case before cited, where the plaintiffs covenanted to prosecute "immediately after the several sums of money became due." There is no such stipulation in this case. I entirely concur with the reasoning of Mr. Justice Thompson on this point, in the case cited. He observes, " if there were any circumstances, whereby any loss might probably be sustained for want of due diligence in procuring payment of the first instalment, it might have been proper evidence for the defendants to have availed themselves of, on the issue with respect to due diligence." I think the evidence satisfactory, that no loss has thereby been sustained. A reasonable discretion as to time was intended to be vested in the plaintiff by the language of the assignment ; the strict construction contended for by the defendant would, I apprehend, be a departure from the obvious import. I conclude, then, that the plaintiff is not chargeable with neglect by omitting to commence the action until May vacation, 1814.

The case of *Moakley* v. *Riggs*, (19 John. 69,) is not applicable. There the defendant undertook that the note was good and collectable *after due course of law*. The plaintiff sued the endorsers, but not the maker, and averred that the maker was discharged under the insolvent act, 17 months after the note became due. The defendant demurred, and the Court held that this neglect discharged the defendant. Whether the maker was possessed of property during the 17 months did not appear. They could not presume that he was not, nor could they say the money might not have been collected if a suit had been instituted when the note fell due. They were not called on to express an opinion, whether the

plaintiff could pass a term with safety ; for, however that might be, there was no doubt that 17 months would discharge from the guaranty. The expression, that a term should not have been lost, may be regarded in that case as an *obiter dictum.* Admitting, however, that it is to be considered as authority, it must be understood as applicable to the case then under consideration, where there was no evidence to show that the money could not have been collected by due course of law. It would not, I apprehend, have been laid down as a rule, had the facts corresponded with this case. In the case of *Kies* v. *T. & S. Tifft,* (1 Cowen, 98,) the facts were these : the defendants gave a note to the plaintiff, payable February 1, 1820, and the plaintiff assigned to the defendants a mortgage against Lewis and Tifft, the last instalment of which was payable on the same day. By a condition to the note under written, the defendants agreed that if the mortgage should be collected by the time set forth, then the note to be payable at the time therein specified ; if not, the note was not payable until the money was collected on the mortgage by due course of law. It did not appear that the defendants had ever prosecuted Lewis, the mortgagor. On the 8th August, 1820, Kies commenced his action on the ground that the defendant had not used due diligence. It was not pretended that Lewis was not of sufficient ability to pay. The Court held that the defendants were liable, that they ought not to have suffered a term to pass without a prosecution, particularly as they were so directed by the plaintiff. This case is also clearly distinguishable from the present. There was no insolvency of the mortgagor proved, or that he was destitute of property, nor that the premises mortgaged were not abundantly sufficient to satisfy the debt. No cause is assigned for not prosecuting. The inference is, that the defendants did not elect so to do, and consequently could have no well founded complaint for being held liable to pay the note.

The next objection is, that the plaintiff has not proved notice of the proceedings to the defendant, and a demand of payment. The declaration avers notice of the proceedings against Streeter and his insolvency ; the truth of this aver

ment is admitted by the pleadings. By the plea of *non est factum*, the execution of the instrument only is put in issue ; all the other material facts are thereby admitted. (10 John. 47.)

The other pleas put in issue the solvency of Streeter, and that the plaintiff might have enforced payment by due process of law. The averment of notice is not traversed. It was, therefore, unnecessary to offer further evidence on that point, at the trial. The liability of the defendant rested on this, that the plaintiff had done all that the covenant required of him.

If the facts, of which the defendant was notified, are, in judgment of law, sufficient to charge him, then his duty required him to pay without a demand. By the express terms of the covenant, he is to pay, if the plaintiff cannot obtain payment by due process of law. After knowledge of this, to insist on a demand, is to make a requisition not required by the contract. There is a difference between a mere duty and a collateral sum. Where the first is promised to be paid on request, no actual request is necessary ; but it is, on a promise to pay a collateral sum *upon request ;* and had the contract in this case contained that stipulation, the plaintiff could not recover without proving it ; but it is not provided for, and was, therefore, unnecessary to be proved. (1 Saund. 33.)

It is also objected, that the facts proved on the trial do not show that the money could not have been collected of Streeter in 1814. I have, in some measure, anticipated this objection. It may safely be conceded that they do not conclusively establish that fact, but do they not remove all reasonable doubt on this subject, and satisfy the mind, that in the exercise of a sound discretion, the plaintiff might well consider it immaterial whether a suit was commenced a term sooner or later ? If there is sufficient ground for deeming the difference of time immaterial, which I think there is, then there was no want of due diligence in permitting the May term to pass without a suit.

It is also urged, that a *ca. sa.* ought to have issued after the return of a *fi. fa.*. The contract does not, in my view,

require it, when it is evident that no benefit could be de
rived by issuing that process, nor any injury to the defen
dant sustained by the omission.    The certain consequence
would have been, the accumulation of costs to be paid by
the plaintiff, without any prospect of remuneration.  It is
enough that all reasonable measures be pursued, such as a
prudent man would take in conducting his affairs with
skill and judgment.    To take every possible step, and ex-
haust every legal process, to no valuable purpose, does not
seem to be demanded by the contract of the parties.    I am
of opinion that the plaintiff is entitled to judgment.

SUTHERLAND, J. (after stating the facts.)   It is contend-
ed on the part of the defendant that the plaintiff is not enti-
tled to recover.    1. Because he has not used due diligence
in prosecuting Streeter, the obligor.    2. Because he has not
used *all* legal means to collect the money from him, no *ca.
sa.* having been issued on the judgment.   3. Because he
has neither averred nor proved a demand of payment from
the defendant of the sum in arrear before suit brought.

The first instalment, and all the interest which became
due upon it having been paid, and constituting no part of
the plaintiff's demand in this action, whether he was guil-
ty of laches or not in the collection of that instalment,
cannot effect his present claim.    The evidence establishes,
beyond all question, the insolvency of Streeter on the first
day of March, 1814 ; and that he had no real property
to be affected by a judgment.    The principal question in this
case arose in the case of *Ten Eyck* v. *Tibbets,* (1 Caines, 427.)
That was also an action of covenant upon an assignment of
a bond payable by instalments.    The covenant was substan-
tially like the one in question.    The plaintiff's action was
founded on the non-payment of the second instalment ; and
in his declaration, he neither averred payment of the first in-
stalment, nor took any notice of it.    It was objected that if
the first instalment was not paid at the day, it was the duty
of the plaintiff to have commenced a suit and obtained a
judgment for the penalty, which would have operated as a
security for the subsequent instalment ; and that he ought

affirmatively to have shown, either that it was paid at the day, or that a suit was commenced. In answer to this, Thompson, J. in his opinion, says, "It is sufficient that no demand is made of the defendant for that instalment; and the presumption is, that it has been paid. Any delay or laches of the plaintiffs in this respect, however, it appears to me, can only be alleged when a demand is made upon them for that instalment. If there were any circumstances (shown) whereby any loss might probably be sustained for want of due diligence in procuring payment of the first instalment, it might have been proper evidence for the defendant on the issue with respect to due diligence, &c." The other Judges were of the same opinion.

But in the case before us, admitting the question of laches as to the first instalment to be open, I think it may well be doubted whether the plaintiff was in default. It does not appear when the proceedings for foreclosing the mortgage were commenced. The sale was in December, nine months after the first instalment became due. There is nothing in this fact from which the presumption necessarily arises, that there was any delay in instituting the proceedings. Every presumption is in favor of the diligence of the plaintiff, and it is for the defendant, affirmatively, to make out a neglect of duty. The sale may have been postponed for want of bidders,; or it may have been delayed for other justifiable reasons. It can hardly be contended that it was the duty of the plaintiff simultaneously to prosecute the bond and foreclose the mortgage. He must do both, if necessary, before he can resort to the defendant. But he may first try the effect of the one, and if that is unavailing, then resort to the other. Here the foreclosure produced more than sufficient to pay all that became due previous to the 1st of March, 1818; and if no suit had been commenced by the plaintiff on the bond, I am not prepared to say that his right would have been affected by the omission, unless it appeared that it had been injurious to the defendant. But here a suit was commenced in May vacation after the instalment became due; that is, within two months. This is *prima facie* sufficient. Where the plaintiff resided at the time does not appear. He may

have lived in a remote part of the state, from which process could not, without extraordinary care and diligence, have been issued and served before the May term. Reasonable diligence is all that is required.

The *dicta* in *Moakley* v. *Riggs*, (19 John. 72,) and *Kies* v. *Tifft*, (1 Cowen, 98,) "*that a term must not be permitted to elapse before suit is brought*," must be taken in connection with the fact in those cases. There was great and unnecessary delay in both.

In relation to the second instalment, the only laches imputed to the plaintiff is in not issuing a *ca. sa.* A *testatum fi. fa.* was issued immediately after it became due, which was returned *nulla bona*, and the declaration avers that the defendant had notice of the fact. This Court has held that where a party undertakes to pay the debt of a third person, *if it cannot be collected from him*, it is necessary to issue, not only a *fi. fa.* but a *ca. sa.* against the original debtor, before recourse can be had to the surety. I do not well see how this case is to be distinguished from that. The fact that here the proceedings are in the name of the guarantor, and that if the body of Streeter, the obligor, had been taken in execution, it would have been a satisfaction of the debt as between him and Woods, does not appear to me to vary the case. That is a risk which Woods assumed, if, by the terms of the covenant, it was the plaintiff's duty to issue a *ca. sa.* before he could resort to him. The taking of Streeter in execution would not have affected the plaintiff's right of action against Woods.

It is no answer to say, that Streeter was insolvent, and that there is no reason to suppose that a *ca. sa.* would have produced the money. Upon that point the witnesses entertained different opinions; and it is the right of the defendant to insist that the effect of it shall be determined, not by the opinion of witnesses, but by actual experiment. By the terms of the defendant's covenant, the issuing of a *ca. sa.* against Streeter was a condition precedent to his liability; and it was incumbent on the plaintiff to show a performance of that condition, or that its performance was dispensed with by the defendant, before he can resort to him. (*Moakley* v. *Riggs*, 19 John. 71-2, per Spencer, J.)

It was not necessary for the plaintiff to aver or prove a demand of payment from the defendant, before suit brought. The declaration contains all that was necessary to be averred on that point; notice to the defendant of the issuing of a *fi. fa.* against Streeter, and a return of *nulla bona*, and that Streeter was insolvent. If those facts established the position, that the money could not be collected from Streeter by due process of law (as the plaintiff supposed) this was enough. The defendant's liability then immediately accrued. It was no part of the contract that payment should be demanded before suit brought. Notice of the facts from which the defendant's liability necessarily resulted was all that was necessary to be averred. The bringing of the action was a sufficient demand.

But upon the second point I have come to the conclusion, though with reluctance, that the defendant is entitled to judgment.

SAVAGE, Ch. Justice, concurred with Mr. Justice WOODWORTH; and proceeded to estimate the amount which the plaintiff ought to recover, according to the principles laid down by him. And a majority of the Court finally concurred in a judgment for the plaintiff for $476 60.

Judgment for the plaintiff.