Thompson, J.
The exceptions taken to tb i declaration are,
1st. That no action could be maintained on the covenant against the defendants, until the last instalment on the bond fell due, which was in May, 1801. The present action was commenced in 1800.
*2d. The insolvency, or inability of Bennington [*435] to pay, is not sufficiently averred.
3d. It does not appear that due dilligence has been used against Bennington, to recover the money.
4th. Ho notice is taken of the payment that fell due the 1st of May, 179,8.
I think all the objections untenable. The-reason urged in support of the first is, that although Bennington might have been insolvent in the year 1799, the time alleged in the declaration, he might not have been so in the year 1801, when the last instalment ■ fell due; and that the covenant only goes to the eventual responsibility of Bennington. This construction appears to me not warranted, either by the terms of the covenant, or what may reasonably be presumed to be the intention of the parties. The bond is made payable by instalments; the general object of the covenant was, to make the defendants responsible for those payments, and a fair interpretation would be, unless a contrary intention was clearly inferrible from the terms of the covenant, that they became security to pay, according to the condition of the bond, in case of Bennington’s insolvency, or inability to pay. This construction is conformable to the general intent and understanding of parties with respect to securities, and there seems nothing peculiar in the phraseology of this covenant, to warrant a different conclusion. The covenant expressly refers to the bond, and purports to guaranty the payment, I think, according to the condition; and if so, there is a breach of *544 the covenant, whenever there is a failure of payment agreeable to the terms of the bond. The assignees have pursued the obligor according to the provisions contained in the covenant. If this covenant would warrant a different construction, it would be, I think, that the whole sum was payable by the defendants, immediately on the insolvency of Bennington ; for the covenant concludes, that then, and in such case, (alluding to the insolvency,) they were to pay “ the amount of the said bond, or such part as remained due.” The result, however, as it respects the present question, would be the same on either construction. The insolvency, or inability of Bennington to pay, appears [*436] *to me to be fully and sufficiently averred. The averment is in the very terms of the covenant, to wit, that on the said 1st day of May, 1799, and long before, the said Jonathan was insolvent, and not able to pay and satisfy the said bond. It is said, however, this is a dependent averment, and is alleged as a conclusion drawn from a detail of facts, and which do not warrant the inference. The facts stated, appear to me fully to warrant the conclusion drawn. They are, that Bennington had, some time previously, absconded, and departed from this state to parts unknown,- and still doth continue absent from the state, at some place unknown: that he had been duly proceeded against as an absconding debtor; and that the result was, that his estate was not sufficient to pay his creditors 10s. in the pound. It was admitted, on the argument, by the defendant’s counsel, that if the averment had been general that Bennington was insolvent, and unable to pay, without detailing the facts from which the conclusion was drawn, t]le declaration would have been good. Admit the declaration to have been thus drawn, and issue had been taken upon the solvency of Bennington, and the facts detailed in the declaration had been proved on the trial, would they not have warranted the jury in pronouncing him insolvent, or unable to pay the bond? I think, clearly, they would. These facts l-t-ung admitted by the demurrer, I think the court is *545 bound to make the same conclusion. It is also said, the plaintiffs ought toffiave shown how much they had received on a distribution of Bennington’s estate among his creditors. This appears to me to be rather matter of defence, and incumbent on the defendants to prove. If the plaintiffs had received anything, it would have been proper evidence, under plea of payment by Bennington. Besides, the declaration does contain an averment that they have not received payment for the instalments, for which the action is brought.
The third exception is, that the plaintiffs have not shown due dilligence in prosecuting Ben'nington; that they ought to have proceeded to outlawry. I think it manifest, that such extraordinary proceedings were not in contemplation of the parties; and, therefore, that the covenant ought not to ^receive such a construction as to make them [*437], requisite, unless clearly warranted by the terms.
The plaintiffs were to use all due diligence, and take all legal measures, by prosecution at law, to recover the money from Bennington; by which I would understand, all ordinary legal measures, prosecuted with good faith. In the present case, the plaintiffs allege, that soon after Bennington absconded, proceedings were commenced against him as an absconding debtor, and prosecuted with due diligence, in order to secure his property; and for the purpose of arresting his person, ordinary process issued on the very day the payment fell due; all which, I think, show due diligence, sufficient to satisfy the terms of the covenant, and the intention of the parties.
The last exception is, that no notice is taken of the payment that fell due on the 1st of May, 1798. It is, I think, a sufficient answer, to say that no demand is made on the defendants for that instalment: and the presumption is, that it has been paid, since the plaintiffs were bound to proceed against Bennington, as soon as the payment fell due, which they appear to have done with respect to the second instalment, the very day it became payable. Any *546 delay, or loches of the plaintiffs in this respect, however, it appears to me, can only be alleged when'a demand is made upon them for that instalment. It is said, that if a suit had been commenced on the bond for the first payment, the judgment would have been for the penalty, and would have been a security on his property for the future payments. This objection fails, without assuming several facts of which nothing appears. Ho evidence that there was any default with respect to this payment; or, but that a suit was commenced, and satisfaction made before judgment, or that he had any real estate which the judgment would have bound. If there were any circumstances of this kind, whereby any loss might probably be sustained for want of due diligence in procuring payment of the first instalment, it might have- been proper evidence for the defendants to have availed themselves of on the issue with respect to due diligence, but can never be ground for the demurrer to the declaration. I am, therefore, of opinion, that [*438] neither of the *exceptions are well taken, and that the plaintiffs ought to have judgment.
Radcliff, J.
The first and principal objection is founded on a strict and literal construction of the terms of the covenant. The bond is conditioned for the- payment, of' four annual instalments of 1,000 dollars each. The defendants assigned this bond to the plaintiffs, and covenanted that in case the obligor should become insolvent, or not be able to pay the said bond, and if the plaintiffs should use due diligence, &o. to recover the same “ immediately after the said several sums of money expressed in the condition, should respectively become due, and should not be able to compel the payment thereof, then the defendants would pay to the plaintiffs the amount of the said bond, with interest, or such part thereof as should then remain due." It was contended by the defendants’ counsel, that by the terms of this covenant, the defendants cannot be held to pay, until all the instalments shall become due; because the covenant is entire, *547 and contemplates a single payment of the amount of the Said bond, or such part thereof as shall remain due. Confined' toi these terms, it would be susceptible of this interpretation: But, I think, it would equally admit of the opposite construction ; that on the failure of the obligor to pay the firstinstalment, the defendants should be liable to pay the whole.The event in which the defendants were to become answerable, was the insolvency of the obligor, or as it is expressed in the covenant, if he should not be able to pay the said bond,.kc. and if the plaintiffs could not recover the same,, (the bond,) that the defendants would pay the amount of the said bond. If the obligor was not able to pay the bond,' and the plaintiffs not able to recover the bond, immediately after the respective instalments became due, then the casus occurred, and the defendants were to pay' the bond, not any particular instalment. Now, if the term bond is to bó con-, Strued in the same sense throughout this covenant, as the penalty would become legally forfeited on the failure of the first payment, the defendants, according to the letter of their engagement, might be considered'liable to pay the whole' bond. There is an additional reason, too, in favor Of this "^construction ; for, the moment the insol- [*439] vency of the obligor happened, there could remain little hope or expectation of recovering the subsequent instalments from him; and it might rationally be intended, that the defendants should at once take back their security against him, and pay the plaintiffs 'the consideration of the assignment which they had already received. But I think either of these constructions too rigorous, and opposed to the intent of the covenant. The bond was due to the defendants by instalments. The sums in the condition were, in reality, the debt. By the assignment, they meant to' substitute the plaintiff's in their stead, and they guarantied the solvency of the obligor, and the payment by him, according to the terms of the condition. This was the sub-' stance of the contract, and the foundation of the covenant t ' which, I therefore think, ought to be taken distributively. *548 and deemed a continuing covenant, on which the defendants would be liable on the failure of the payment of each ■ instalment.
With respect to the other objections which have been stated, I acquiesce in the opinion already delivered, and, generally, for the reasons which have been assigned.
I am, therefore, of opinion, that the plaintiffs are entitled to judgment on the demurrers.[1]
Kent, J.
This case comes before the court on demurrer to the first and third replications. Upon the argument of these demurrers, the counsel for the defendants relied upon what they contended to be substantial defects in the declaration. It was there that the first fault was to be found, and to which they choose to resort.
The action was commenced in July term, 1800, and the last instalment on the bond was payable on the 1st of May, 1801; and it was contended, that the defendants were not liable upon their covenant until all the moneys on the bond became due. An important question accordingly arises on the construction of the covenant. It was to pay the amount of the bond, with interest, or such part as should remain due and unpaid. But there were two conditions precedent to recovery upon this covenant. [*440] *lst. That- the obligor should become insolvent, or not able to pay and satisfy the bond.
2d. That the plaintiffs should have used all due diligence, and have taken all legal measures, by prosecution at law, to recover the same, and that, too, immediately after the several sums of money should respectively have become due, and should not have been able, by such means, to have compelled the payment thereof. The bond was payable by *549 instalments, and there can be no doubt but that the obligor was liable to suit on default of payment of any of the instalments. Coates v. Hewit, 1 Wils. 80; Hallet v. Hodges, Sayer, 29 ; Buller, 168 ; Marsen v. Touchet, 2 Bl. Rep. 706. As to the cases in Co. Litt. 292, b. and 1 H. Bl. 547.(a) they relate only to debt on simple contract, or single bill. But the covenant was not, by the terms of it, to indemnify by instalments; it was to pay the amount of the bond; and that, too, only upon the condition that the obligor was not able to pay the bond, 'and that the plaintiffs had used all legal means to recover the same, immediately after the sums had respectively become due, and had not been able to , compel payment. The language of the' covenant throughout has reference to the bond as one entire debt, and the payment to be made by the defendants, in pursuance of the covenant, was of one aggregate or entire sum; or, so much thereof as should remain unpaid. I am of opinion, therefore, that the defendants were not liable on their covenant until all the payments on the bond had become due. Thé burden of suing and collecting the instalments was, by thé assignment, cast upon the plaintiffs; and if they could resort to the defendants on the first, or any default prior to the ultimate one, they must be entitled to recover the whole amount of the bond from the defendants before all the instalments were due, and before the legal means had been used to ascertain whether the obligor was, or was not, competent to pay. This would be contravening the express words of the covenant, which were, that the defendants were not to pay until all such means had been used, as the instalments respectively became due. It would be casting back upon the defendants the burden of using thése means, which the plaintiffs had, by the contract -assumed. These conse *550 [*441J quences *appear to me to result from the do» trine maintained by the plaintiffs, and they are too inconsistent with the covenant to be admitted. If, however, the plaintiffs were not entitled to recover the whole amount of the bond, but only the amount of the instalment in arrear, then it would follow, that the defend ants would be subject to different suits upon the covenant, as the defendants on the part of the obligor should respectively arise. But this consequence would be against the rule of law, that for one entire contract, there shall be but one action, and would subject the defendants to the manifest inconvenience of not having it in their power, by the return, and re-ownership .of the bond, to try the experiment o£ legal means on their part, against the obligor. For, I take it for granted, that while the plaintiffs were lawful owners of the bond, (and they would continue owners until default in-the last instalment,) the defendants could not institute a suit upon it; for this might lead to the absurdity of concurrent suits, at the same time, on one instrument, for the £ame penalty, and for the use of different persons.
In every view which I can take of this covenant, it admits of but one construction. It was one simple and entire engagement. The insolvency of the obligor, and the efforts of the plaintiffs, were to be first shown with respect to all the instalments. If, might be, that the obligor would return, and be able to pay the bond when the last instalment fell due. The present suit being brought before this period, was prematurely brought, and before the cause of action arose, I am, therefore, of opinion, that, on this ground, judgment ought to be given for the defendants.
There was another ground taken by the defendants, that might merit some consideration; I mean the want of an averment in the declaration, that the first instalment was paid, or that due means had been used to recover it.. But •it is not necessary for me, at present, to examine any other point than the one I have considered.
*551 Lewis, Ch. J.
The question now before the court is, has there been, on the part of. the plaintiffs, a failure in the performance of the condition, on which the defend- ¡ -ants covenanted *to pay, in the event of the ina- [*442] bility or insolvency of the obligor ?
■ It is contended on the part of the defendants, that the .plaintiffs were not entitled to recover until the last instalment should have fallen due-; and then only, on showing that they had duly prosecuted for each as they respectively became due. That the absconding of Bennington, and the proceedings against him under the absconding debtor’s act, were not conclusive evidence of his insolvency. That though, perhaps, insolvent on the 1st of May, 1799, when the second instalment was payable, he might have been solvent at the time of the third or last instalment becoming due. That the terms “ all due diligence” could only be satisfied by a prosecution to outlawry; and that the plaintiffs ought to have applied for, and received, their, dividend under the assignment.
There are two events, in either of which the defendants engage to be responsible. The one is, the insolvency of Bennington ; the other, his not being able to pay and satisfy the bond. These might be considered one and the same thing, were it not that the parties intended to distinguish between them. They are in the disjunctive; the one coupled with a condition, the other unconditional. The distinction, in the understanding of the parties, could be no other than that, between an incapacity in Bennington to discharge his debts generally, and a mere inability to discharge the bond according to its condition. In the first instance, the condition compelling the plaintiffs tb prosecute would have been useless; in the second, it might eventually secure the debt.
The first question, then, is, was Bennington insolvent within the meaning of the contract ? It is stated, and not denied, that he had absconded before the instalment payable in 1799; had absented himself from the state, and continued without it at the- time of bringing the suit. That, also, *552 previous to that period, his property had. been assigned under the absconding debtor’s act; and ■ that it neated a dividend of but 10s. in the pound. On such assignment, the debtor’s property is devested, his mercantile operations are suspended. ]STo payments can be made to him, [*443] nor can he *dispose of his property. This, in my conception is a complete state of insolvency. Pro* 'ceedings under the insolvent act are not necessary to constitute it. That act is intended as a benefit to the unfortunate, who must be actually insolvent before they' can have ■relief under it.
'But, admitting that in contemplation of the parties, no distinction was intended between the cases of the insolvency of Pennington and his inability to pay, according to the condition óf the bond, but that, in every event, he was bound to prosecute on default of the obligor, has he not complied with such condition ? On the very da,y on which the first default took place, he issued a copias; and, on its return, an alias. Pennington could not be taken being out of the jurisdiction. To prosecute to outlawry a man whose, property had been already assigned for the benefit of his creditors, would have been a useless expense, and could not have added to the security of the debt. The law, therefore, would not impose it upon them. And as the suit was in the name of the defendants, and, in effect, for their benefit, they might have continued the prosecution, had they chosen so to do.
As to the plaintiffs’ instituting a new suit on the second default, viz. on the non-payment of the instalment due in 1800, this, also, would have been useless. For, could a recovery have been had in the first suit, it would have answered every beneficial purpose. The j udgment would have been for the penalty, and would have remained a security for the future instalments.
With respect to the plaintiffs not applying for a dividend, there appear two answers to the objection ; 1st. It does not appear on the pleadings, that the dividend has not been *553 received; 2d. The defendants were the proper persons to apply for it. They were the obligees originally, and when the assignment under the act took place, the possibility of recovery was defeated; they, by the terms of the contract, then became the substitutes of Bennington to the plaintiffs, and were to look to him, or his property, for an indemnity. On every ground, I am of opinion, judgment must be-for the plaintiffs.(a)
Judgment for the plaintiffs.

 See Loveland v. Shepard, 2 Hill, 139; Eddy v. Stanton, 21 Wend. 255; Curtis v. Smallman, 14 Wend. 231; Morris v. Wadsworth, 17 Wend. 103; Herrick v. Burst, 4 Hill, 650; White v. Case, 13 Wend. 543; The People v. Jansen, 7 J. R. 332; Lamoureux v. Hewett, 5 Wend. 307; Barker v. Sheppard, 11 Wend. 629; Cumpston v. McNair, 1 Wend. 457; Moakley v. Biggs 19 J. R. 69.

 Rudder v. Price. See Hunt's Case, Owen, 42. 1 Leon. 208. Bishop v. Young, 2 Bos. & Pull. 84, where Lord Eldon says, “Whether the instalments on the note in Rudder v. Price, were due or not, still the form of the action was misconceived.” H. B. It was debt by the payee against the maker; quaere, therefore, as to this.

 Covenant by the endorsee of the payee of a note not negotiable, to pay to his assignee the amount, in case such assignee should take all, and every legal step to prosecute to effect the maker and payee. The assignee having been nonsuited in Massachusetts, -in an action against the maker, by the payee’s coming into court and disavowing any authority to sue in his name, it was held that covenant might be maintained against the assignor without' proceeding against the payee. Betts v Turner, 1 Johns. Oas. 65, S. C. reported in 2 Caines’ Cases in Error, 305, where the opinion of Kent, J., (which seems the better law, and in which Lansing, Ch. J., concurred,) is stated as the decision of the court, whereas it was contra that of the majority of the bench. The author of this note,- and the profession at large, are under obligations of no small weight to Mr. Johnson for this, and perhaps some 'other corrections in 2 Caines’ Cases in Error. “Inaccurate reports” being, as is justly observed in the preface to 1 Johns. Cas. “the bane of legal science.” It is, however, to be regretted, that the learned editor of those cases did not advert to the decisions in the supreme court, which had been antecedently published. It would have saved to the bar the repurchase of many determinations in Coleman, which follow nearly in succession, and nearly in totidem verbis, in Johnson, as well as some which hardly vary from the statements in Caines. The accident has probably arisen from Mr. Justice Radcliff having been on the bench when all the cases were decided, and having handed over to Mr. Johnson the whole of his notes, without discriminating those determinations which had already appeared.