M'KAY *against* GREEN and others.

*October* 13.    The personal estate of an intestate is the primary fund for the payment of debts, and is to be first resorted to by the creditor, at law. He can only come into this court for an account and discovery of assets, and on the ground of a *trust* in the executor or administrator to pay debts; not for a sale of real estate, on a supposed equitable *lien*, arising from the money advanced by him, having been applied to purchase the land.

Whether a creditor, in an ordinary case, and without some special cause, can come into this court to collect his debt from an executor or administrator, or merely to enforce a rateable distribution of assets? *Quære.*

THE bill stated, that *J. W. Green*, in 1807, contracted to purchase a house and lot in *New-York*, and wanting five hundred dollars for the purpose, applied to the plaintiff for his assistance to raise the money, representing to him that he would mortgage the premises, as security, for any advances that the plaintiff might be obliged to make. That

the plaintiff, in confidence that the premises would be a security to him for his engagement, endorsed a promissory note, made by *Green*, the 15th of *October*, 1807, for 500 dollars, payable in 60 days, for the purpose of raising that sum to complete the purchase by *Green*, who, by means of the note, procured the money, and having completed the purchase, received a deed for the premises, of which he took possession, and about the 1st of *January*, 1808, and before the note became due, died intestate, leaving a widow and children, defendants. That *Green* made no provision for the payment of the note, and his personal property was wholly insufficient to pay his debts. That the note fell due the 19th of *January*, 1808, and the suit was brought, by the holder, against the plaintiff, as endorser, and a judgment recovered for 598 dollars and 94 cents, which the plaintiff paid, on execution, the 5th of *February*, 1808. Letters of Administration were granted to his widow, *Margaret Green*, defendant.

The bill charged, that the sum of 500 dollars, so received by the intestate, *Green*, by means of the note endorsed by the plaintiff, for the purpose of making the purchase, gave the plaintiff a *lien*, for the amount, on the premises; and that *Green*, in his lifetime, and the defendants, since his death, are so far trustees of the property for the benefit of the plaintiff. The bill prayed, that the premises might be sold, and the plaintiff paid out of the proceeds, and for general relief.

The defendants, in their answer, denied any knowledge of the note, or of any agreement by *Green* that the premises were to be held as security, or of the suit against the plaintiff. They admitted that *Green* made the purchase, and took possession of the property, on the 1st of *May*, 1807, and that the personal property was insufficient to pay his debts.

Some proof was taken in the cause, but it did not show that the plaintiff endorsed the note under any assurance,

1817.

M'KAY
v.
GREEN.

at the time, that the land should be held as a security, but merely that the intestate, in his last illness, promised to give the plaintiff a bond and judgment for his security. The deed to *Green* was dated the 1st of *May*, 1807, and acknowledged the 12th of *December*, 1807. The note was dated the 16th of *October*, 1807, and was payable in three months. *Green* died the 18th of *January*, 1808.

*Slosson*, for the plaintiff.

*Baldwin*, for the defendant.

THE CHANCELLOR. The plaintiff endorsed the note of the intestate, upon his personal credit, and there was no promise, at the time, of any real security, nor any thing in the transaction to imply one. The notion that the plaintiff had an equitable *lien* upon the land, because the note he endorsed was applied in part payment of the purchase money, is entirely without foundation. Nor is the bill framed for an account of assets, or so as to entitle the plaintiff to proceed, in this court, as a creditor. The personal estate is the first and primary fund for the payment of debts, and the plaintiff ought to have resorted, at law, to that fund. He can only come here for an account and discovery of assets, and on the ground of *a trust* in the executor or administrator to pay debts. (3 *Atk.* 572. 1 *Sch. & Lef.* 262.) The bill was not intended for that purpose, but only to enforce a sale of the land, by reason of the supposed lien. I doubt whether a creditor ought to come into this court in an ordinary case, and without some special cause, to collect his debt from an executor or administrator. It would seem not to be enough to state that he is a simple contract creditor, for this would invite all suits against executors in this court. The ordinary and proper, as well as the cheaper and easier remedy, is at law. The resort here is only in special cases. In *Gilpin* v.

*Southampton,* (18 *Ves.* 469.) Lord *Eldon* said, that ever since he had known the court, suits had been allowed against executors, or, rather by executors in the name of a creditor, against themselves. The reason was, that as executors had vast powers of *preference at law*, the court had not disapproved of their coming, in the shape of an application by a creditor, in order to give a judgment to all the creditors, and to secure a distribution of the assets, without preference to any. When once *the decree was made*, it was impossible to permit a creditor to go on at law. But as considerable inconvenience arose from this practice, Lord *Eldon* introduced the rule, that where the answer did not state what the assets were, the executor should be called upon to state them by affidavit, before the injunction issued.

I am not sufficiently informed, or prepared, to assume the entire and exclusive jurisdiction of suits against executors and administrators, merely for the purpose of enforcing a rateable distribution of assets. It is, indeed, the *dictum* of Sir *James Mansfield,* (1 *Campb. N. P.* 148.) that the creditors of a deceased insolvent may always be compelled, through the medium of a court of equity, to take an equal distribution of the assets. He said it was only necessary for a friendly bill to be filed against the executor or administrator to account, after which the chancellor would injoin any of the creditors from proceeding at law. This opinion came from a judge of very high authority, and who had great experience in chancery practice; but he admitted, that the lawyers in the court of K. B. were not aware of this rule. Without having formed any decided opinion, one way or the other, on this subject, it is sufficient to observe, in this case, that the bill was not intended, or adapted for any such general purpose, and it must be dismissed.

Bill dismissed.