GINOCHIO *vs.* PORCELLA.

*In the matter of the Estate of* ANTONIO PORCELLA, *deceased.*

UPON a question of assets the declarations of the deceased may be admissible as pertinent to the inquiry whether the administrator has made the proper efforts to administer the estate, but they are not binding as declarations to charge the representative with assets.

An executor or administrator is not concluded by the statements of the deceased, but is only obligated to a faithful attempt to realize the largest amount from the assets which have come to his knowledge.

The testimony of a witness in one suit, cannot be received as evidence in another suit although between the same parties.

Where the wife of the intestate, after his decease, but before the news of his death had reached her, received debts due to him, acting as his agent to make collections during his absence for her support,—*Held*, that having appropriated the money to the purpose authorized, in good faith, she was not liable to the creditors of the deceased. Whether the debtor who had paid under such circumstances, could be compelled to pay a second time on an action being brought by the administrator,—*Quære?*

A judgment against an administrator is no evidence of assets. The Revised Statutes have altered the rule of the common law in this respect. The judgment only establishes the amount due by the estate. The estate cannot be distributed without the action of the Surrogate or a court of equity, nor can execution issue without the permission of the Surrogate.

GERARDUS CLARK, *for Creditors.*

I. The administratrix has been guilty of perjury and fraud in the administration of the estate, particularly in respect to the inventory. 1. In respect to the item of ten dollars paid

by Bartolomeo Solari, which should be fifty-five, according to the deposition of Solari, and the evidence of Mrs. Volpe, John Sturla, Stephano Missieu, and L. B. Missieu. 2. In respect to the forty dollars received from Mr. Reynolds. It is shown that it should be eighty-seven dollars, at least, which was paid by Joseph Martini. See his deposition and the receipt of Mrs. Porcella and of Montegrif. 3. She states the indebtedness of Levoroni at ten dollars: we have shown she received from him forty dollars. See Levoroni's and Antinossi's evidence. 4. She entirely omits the thirty dollars cash received by her from Lewis Vicare. 5. She omits the indebtedness of Carressa Cavernare and Sebastiano Solari, although she had the documentary evidence of at least two of them in her possession.

II. We have proved assets sufficient to pay the debts.

III. The judgments by default are conclusive evidence of assets. (4 *Cowen*, 445; 18 *J. R.*, 503; 1 *J. Ca.*, 276; 3 *T. R.*, 685; 2 *Saund.*, 219, *note* 8.)

W. C. Freeman,
Philip Reynolds, *for Administratrix.*

1. The default permitted by the administratrix in the suit by the creditors against the estate is no evidence of assets. (*Nicholas* vs. *Chapman*, 9 *Wend.*, *p.* 452; *Parker's Exrs.* vs. *Gainer's Admr.*, 17 *Wend.*, 559; *Butler* vs. *Hempstead's Admr.*, 18 *Wend.*, 666; *Allen and Wife* vs. *Bishop's Exrs.*, 25 *Wend.*, 414; *Dayton on Surrogate Law*, *page* 110, &c., *to* 116.)

2. Declarations by an intestate, while living, of property owned by or due to him, are not evidences of assets in the hands of the administratrix, unless it is shown the same belonged to or was owing to the intestate at the time of his death, and has been or might have been reduced to possession by the administratrix.

3. Payments made to a wife by debtors of her husband, and by his authority and in his absence from the country, and prior to knowledge of his death, and prior to granting letters of administration to the wife, and used by her in support of herself and children, do not constitute the wife an administratrix *de son tort.*

4. Payment to a wife under such circumstances is a payment to the husband's agent, the wife, in the absence of the husband, she being considered in law his agent. (*Church* vs. *Landers,* 10 *Wend., p.* 79.)

5. To constitute an administrator *de son tort,* knowledge of death must be brought home to the person collecting or intermeddling with the estate, and the general rule is that a party entitled to administration can do nothing as administrator before letters of administration are granted to him. (*Williams on Executors, p.* 210; *Ib.,* 216, *note* 1; *Ib.,* 217, *note* 1; *Ib.,* 332.)

6. A husband is bound to support his wife, and money paid her during his absence from the country, and used for that purpose, cannot be claimed by creditors, if the same be reasonable.

THE SURROGATE.—The decedent embarked from the city of New York for California, the twentieth of January, 1853, leaving his family here. He died the twenty-seventh of February next ensuing; and his wife having administered, an effort has been made on the part of his creditors to establish assets beyond the amount stated in the inventory. The parties and the witnesses are Italians, little conversant with our language, and having peculiar modes of transacting their humble business—which circumstances in conjunction with some conflict of testimony, render it somewhat difficult to ascertain the facts with precision. It is in proof, that the

intestate after his departure from New York, stated his property and credits at seven hundred dollars, and if we include the bad debts due to him, this estimate was not grossly exaggerated. His declarations on this point may be admissible as pertinent to the inquiry, whether the administratrix has made the proper efforts to administer the estate, but they are not binding as declarations upon the administratrix, so as to charge her with that amount of assets. Upon a question of due administration, an executor or administrator is not concluded by the statements of the deceased, but is only obligated to a faithful attempt to realize the largest amount, from the assets which have come to his knowledge. It would be difficult to find a person willing to accept such a trust at the hazard of being compelled to account for the property, at the value or estimate placed upon it by the deceased. As between the estate and creditors, the declarations of the decedent may be conclusive; but as to the personal liability of the trustee, they have no other force or effect than to put the latter on their being brought home to him upon a reasonable inquiry, and effort at collection. With the exceptions hereafter noted, the debts due to the intestate Porcella, appear to have been worthless. The debtors were Italian strollers, or organ-players—about as unpromising subjects of lawsuits and executions as could well be imagined. One of them, at one time made a show of offering to pay, provided he received certain securities, which he alleged the administratrix possessed, but that was the last that was heard of him: and another, whom the administratrix followed to Boston, decamped in the night with his organ, leaving his debt unpaid. It would be utterly unjust to charge her for these claims. If the creditors think themselves more likely to be successful in the pursuit of these itinerant musicians, they may take an assignment of the demands, and make the effort at their own risk, on giving a proper indemnity to the estate.

The intestate before his departure sold a piano to B. Solari. The claimants allege, that fifty-nine dollars were due on this contract at the time of Porcella's death; while the adminis-

tratrix insists that she received only ten dollars as the amount due. Upon proceedings under the Code on a judge's order, supplementary to a judgment and execution against the administratrix, Solari testified, that he had paid the administratrix in June, 1853, the balance remaining due on the contract, over and above five dollars paid Porcella. This affidavit is inadmissible as evidence. The testimony of a witness can never bind a party as a declaration; and as evidence, proofs in one suit cannot be used in another suit, although between the same parties. But it appears beyond all question, from other evidence, that Solari did make a payment to the administratrix in the presence of several persons, and a receipt was given on the occasion, and yet no one testifies to the amount paid except Montegriffe, who was boarding with the administratrix when her husband left, and who has been living with her, or she with him ever since. This same Montegriffe claims to have purchased a flute-piano of Porcella for one hundred dollars, the day before he sailed, and to have paid him three twenty dollar gold pieces on account: and the decedent's daughter swears to the payment. Now first, as to the piano sold Solari, besides the failure on the part of the administratrix to prove the amount he paid, by disinterested witnesses, there is the evidence of a sister of Porcella, who states, that she came to this country in June, 1853, and went to her sister-in-law's house, that Solari came there, and Mrs. Porcella said, "Where is my piano?"; "he said he would bring it the next day, and the next day he brought it to her. I asked Mrs. Porcella if the piano was hers, and she said it was." If only five dollars had been paid on the contract, this conduct was natural, while if all had been paid but ten dollars, it is difficult of explanation. As to the piano claimed by Montegriffe, in the first place his receipt expresses that Mrs. Porcella herself had made the sale. Next it is proved that she hired it out—let it to her daughter to stroll about the streets with, in company with an unknown Italian, on shares; went once before the Sardinian consul to sell it, and in every respect treated it as her own. Besides, the daughter and Monte-

griffe disagree on a very important point—she saying a re-- ceipt was passed on the sale by Porcella, and he asserting there was none. Which tells the truth I cannot say, but in view of the habits of these people as in proof before me, if there was a sale, there was probably a receipt, and yet none is produced. At any rate these two witnesses contradict each other; and although it is alleged that other witnesses were present at the transaction, none have been called to solve this difficulty, or to support the claim, or to corroborate the testi- mony. I therefore think the weight of the evidence leads to the conclusion, that the administratrix should be charged with the proceeds of both these instruments.

As to the sums received by her from Leveroni and Viacari, before the news of her husband's death, and as his agent under the authority he gave her to make collections during his ab- sence for her support, the amount is of no great consequence, as in any event the widow would be entitled to her reasonable sustenance out of the estate for forty days after the decease of her husband. But the principle involved is an important one, and the question not without novelty and interest.

The general rule undoubtedly is, that the authority of the attorney or agent dies with the principal. A dead man can have no one acting in his name and by his authority. And although Justice Story in his treatise on Agency, shows that this proposition is not a universal one, yet the exceptional illustrations he gives, are of such agencies as are either cou- pled with an interest in the property, or are ordinarily admin- istered in the name of the agent himself. In such cases, the powers are acted upon until notice of revocation. In *Blades* vs. *Free*, 9 *Bar. & C.* 167, where a man who for some years had cohabited with a woman passing for his wife, went abroad, leaving her and her family at his residence, and died abroad; it was held, that the executor was not bound to pay for any goods supplied to her after his death, although before infor- mation of his death had been received. On the other hand, in *Smout* vs. *Ilbery*, 10 *Mees. & Welsb.*, where the deceased had been in the habit of dealing with the plaintiff for meat

supplied to his house, went abroad leaving his wife and family at his residence, and died abroad; it was decided that his widow was not liable for goods supplied to her after her husband's death, and before information of his death had been received. The principle of this case seems to be, that although the authority had expired, yet the agent was not in fault, nor in the commission of any fraud; but the revocation occurred by the act of God; and although the estate of the principal might not be liable, the agent acting in good faith was not liable. In the present instance, the wife has received and expended the money for her own support. She received it as the agent of her husband, and if her authority to receive it be recognized, her authority to expend it must be ratified in the same breath. While if her authority to receive it be denied, then the administrator of her husband would have no right of action against her, whatever might be his claim against the debtor who had paid her. The wife acted as an agent in good faith; she received the money, believing her husband to be still living, and expended it in the support of the family. If her authority was good until notice of revocation, the administrator would have no claim—if it was not good, the cause of action, if any, would rest with the debtor. who had paid her without authority—and who, if the validity of the payment were contested, might be compelled to pay over again to the administrator of the deceased. But as the widow in the present case is administratrix, it may be said, that in that capacity she is bound to prosecute these parties and make them pay a second time. If the claimants think such a demand could be enforced, they may prosecute it on the same terms as I have prescribed in regard to the other claims. I am not prepared to say that there would be a recovery, in view of the modern inclination to relax somewhat the rigid rule of the common law, and to lean towards the Roman rule in respect to acts done in good faith before notice of revocation. (*Houghtaling* vs. *Marvin*, 7 *Barb. S. C.*, 412; *Story on Agency*, § 497.)

The point urged by the counsel for the claimants, that a judg-

ment by default against an administrator is evidence of assets, is not well taken—the Revised Statutes having altered the whole system of the common law on this subject. A judgment against an executor or administrator, now proves nothing more than the amount the estate owes the creditor. All the jurisdiction as to the accounts is reposed with the Surrogate or the courts of equity, and the judgment creditor cannot have the estate distributed, except through the medium of one of those tribunals, nor can he lawfully issue execution on his judgment without the permission of the Surrogate. The judgment at law is in fact only a liquidation of the *debt*, and does not conclude the administrator or executor on the question of assets, at all. It is proper, therefore in the present proceeding, to examine the accounts of the administratrix, and if on being made up on the principles I have laid down, there is anything remaining to be distributed among the creditors, they must share ratably without any preference in favor of the party who recovered the judgment.