PETER W. SCHMITZ, Appellant, *v.* MARIA L. LANGHAAR, as Executrix, etc., Respondent.

Defendant set up as a counter-claim in this action and proved that plaintiff transferred by written assignment to L., defendant's testator, an account against the estate of T.; the assignment contained an agreement on the part of the assignee, that in case the money received by him from L. could not be collected from "the representatives of" T., he would pay the same to L. with interest. The claim was duly presented by L. to the executors of T., and to a referee appointed in the course of legal proceedings to pass upon claims against his estate. After certain deductions for goods not delivered by plaintiff, the balance of said account was allowed, and upon this a dividend of twenty-five per cent was paid. The real estate of T. was sold in proceedings before the surrogate, but nothing more was received by L. or other creditors. *Held,* that L. used due diligence in exhausting legal remedies; and that defendant was entitled to counter-claim the balance paid by L. to plaintiff over the percentage so received; that it was not necessary to proceed to judgment and execution against the estate of T.

The difference between this case and that of a guaranty of collection of a claim against a living debtor pointed out.

The provisions of the Revised Statutes (2 R. S. 116, §§ 19, 20, 21), in regard to the issuing of executions upon a judgment obtained against "any executor or administrator after a trial at law," relate only to a case where such representative has disputed the debt and subjected the creditor to a litigation; no preference is given to the judgment-creditor, and execution, if one is permitted by the surrogate, is to be paid only in the proportion paid to other creditors.

The history of legislation on this subject prior to the Revised Statutes stated.

(Argued March 7, 1882; decided April 11, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made February 10, 1881, which affirmed a judgment in favor of plaintiff, entered upon an order setting aside a verdict for plaintiff and directing a verdict for defendant, it having been stipulated by counsel that in case the court, on consideration, concluded the direction of a verdict for plaintiff was erroneous, the case might take this course. (Reported below, 24 Hun, 168.)

The nature of the action and the facts are set forth in the opinion.

*Winchester Britton* for appellant. Guaranty of collection requires that the creditor should exhaust all legal remedies against the principal debtor before resorting to the guarantor; and this is a condition precedent to a recovery against him. (*Craig* v. *Parker*, 40 N. Y. 181; *Northern Ins. Co.* v. *Wright*, 76 id. 446, 448; *Burt* v. *Horner*, 5 Barb. 502; *Newell* v. *Fowler*, 23 id. 628; *McMurray* v. *Noyes*, 72 id. 523; *Taylor* v. *Bullen*, 6 Cow. 624; *Bosman* v. *Akeley*, 39 Mich. 710.) In case the creditor is not diligent, the guarantor is under no obligation, either legal or moral, to pay, and the obligation cannot be revived even by an express promise without new and valid consideration. (*Vanderveer* v. *Wright*, 6 Barb. 547.) Nothing will excuse want of diligence (except the act of the guarantor), not even absolute insolvency. (*Newell* v. *Fowler*, 23 Barb. 628.) A judgment-creditor of an executor or administrator, after a trial at law on the merits, six months having expired after letters granted, may apply for leave to issue execution upon his judgment; and in a proper case such leave will be granted, and such proper case is where there clearly appears to be a surplus. The decision of the surrogate in such cases as to assets is made conclusive. (2 R. S. 116, §§ 19, 20, 21; *Mount* v. *Mitchell*, 31 N. Y. 361; *Davies* v. *Skidmore*, 5 Hill, 501; *Burt* v. *Horner*, 5 Barb. 501.) If Langhaar was not required to go to judgment on his claim, there were other remedies provided by statute which he should have resorted to. (2 R. S. 116, § 18, subd. 1; *Thompson* v. *Taylor*, 71 N. Y. 217; 2 R. S. 92, § 52.)

*F. F. Marbury* for respondent. It was not necessary for the defendant's testator to obtain a judgment against the representatives of the Taylor estate, as all that could be gained by a judgment was obtained by the admission and allowance by the executors of the defendant's claim. (*Ginochio* v. *Parcella*, 3 Bradf. 283; Redfield on Surrogates [1st ed.], 297; 2

R. S. [6th ed.] 97.)     If an action has been commenced against the executors of the Taylor estate and judgment obtained, an execution could not have been issued. (Redfield on Surrogates [1st ed.], 303; 3 R. S. [6th ed.] 125.)

DANFORTH, J.   The action was upon contract to recover for money loaned and the price of goods sold by the plaintiff to the defendant's testator.   Upon the trial the defendant, under pleadings permitting such evidence, showed by way of counter-claim that one James B. Taylor in his lifetime became indebted to the plaintiff upon account, and died in 1870, leaving a will, under which executors were appointed; that the plaintiff, on the 19th of January, 1871, executed and delivered to the defendant's testator an assignment of the account in the following words:

"James B. Taylor in his life-time purchased furniture, etc., of me, as per bill annexed, for $22,338, of which he has paid me $15,000 and gave me his two notes, each dated June 6, 1870, at four months each, for $1,000.   I sold the notes to John Langhaar, for $1,850, who is now the holder thereof. In consideration of $4,800, to me paid by John Langhaar, I hereby transfer and set over the balance, being $5,338, due me on said annexed bill over and above the amount due me on the notes, to have and to hold the same to said John Langhaar absolutely forever, with the right to receive and collect the same from the legal representatives of James B. Taylor.   In case the money received by me from John Langhaar cannot be collected from the representatives of James B. Taylor, I agree to pay the same to John Langhaar, with interest."

She then proved that the claim therein referred to was in due time presented to the executors of the estate of Taylor, and to a referee appointed in the course of legal proceedings to pass upon claims against the estate.   The plaintiff was present upon those occasions, and after making certain deductions for goods not in fact delivered by the plaintiff, the balance was

allowed at $5,614.79 as justly due from the estate. Upon this a dividend of twenty-five per cent was paid, amounting to $1,403.69. Proceedings were had before the surrogate for the sale of Taylor's real estate, but the product was so exhausted that nothing more reached the defendant, or the claim, or any of the creditors. " The incumbrances and taxes ate it all up."

It was admitted that the amount unpaid was $8,437.56, with interest from September 9, 1879, and the defendant entitled to judgment therefor, unless it was indispensable to her " right to recover, that the testator should have proceeded to judgment and execution against the Taylor estate." The plaintiff insisted that the question was not for the jury, but the court ; and, after consideration, the trial judge held that the defendant had used due diligence in exhausting the legal remedies, and that it was not necessary to proceed to judgment and execution against the estate or representatives of Taylor, and ordered judgment for the defendant for the above sum. The General Term were of the same opinion. The appellant's contention will lead to a reversal of this judgment, if the rule applicable to an ordinary " guaranty of collection " of a debt or demand due from a living person, is to apply. In such a case the law of this State construes the obligation as an undertaking, that the demand is collectible by due course of law, and the guarantor bound to pay the sum specified in the original contract, " provided the principal is prosecuted to judgment and execution with due diligence, and the same cannot be collected of him." (*Craig* v. *Parkis*, 40 N. Y. 181.) We have come to regard these proceedings and the return of the proper officer that the writ cannot be enforced, as the best evidence that the method of procedure prescribed by law for the collection of debts has been followed, and of the debtor's inability to pay. (*Cumpston* v. *McNair*, 1 Wend. 457 ; *Curtis* v. *Smallman*, 14 id. 231.)

But in this as in other cases, the extent of the obligation must be ascertained by considering not only the language of the instrument, but also the nature of the transaction to which it relates, and such fair and reasonable interpretation be given

to the contract as will carry into effect the intention of the parties, and so attain the object for which the instrument is designed. ( *White* v. *Case*, 13 Wend. 543 ; *Dobbin* v. *Bradley*, 17 id. 422 ; *Gates* v. *McKee*, 13 N. Y. 232 ; *Rindge* v. *Judson*, 24 id. 64.) It is evident that neither judgment nor execution against the debtor was within the contemplation of the parties; either would have been impossible, for he was dead, and so it appeared upon the face of the paper. The language is not ambiguous. Collection is to be made of the "representatives" of Taylor. But notwithstanding his death, the defendant was undoubtedly bound to pursue such ordinary legal remedies as she was entitled to, before a claim could be made under the guaranty. The event of death fixed the rights of creditors, and brought them and the estate under subjection to those statutes which provide for administration and the distribution of the property of a deceased debtor, and the jurisdiction of a court clothed with powers competent to settle the accounts of the estate and to decree and enforce distribution, even by attachment and imprisonment if necessary. A judgment and execution would not enlarge those powers or give greater security to the creditor, and to obtain them, if it were possible to do so, would be a useless expense where the statute itself had already appropriated the property to the payment of debts.

It should, therefore, be held, in view of the language of this agreement, that both parties had in mind proceedings within the jurisdiction of the surrogate, and not partly in his and partly in another forum. The debt was not to be ascertained by judgment and enforced by execution, but with statutory proof submitted to the executor (2 R. S. 88, § 35), and if allowed by him, to be paid, not at once and to the exclusion of others, but with them and in due course of administration. (2 R. S. 87, § 27.) The creditor had done his part when he procured the adjustment of his demand and lodged it with the executor for payment. These measures are the ordinary remedies prescribed by statute ; are equivalent to the judgment and execution permitted by common law, and equally with the lat-

ter satisfy the legal duty of the creditor to take affirmative action for the collection of the debt. In neither case need he go beyond the ordinary legal remedies provided by law for that purpose.

In the case of a living debtor having, or entitled to have, the possession of property, the only required test is the result of the usual process by judgment and execution, remedies open to all creditors and constituting due process of law. (*Thomas* v. *Woods*, 4 Cow. 173.) Nothing more is exacted; neither an execution against the person, although it might be had (*Thomas* v. *Woods*, *supra*), nor proceedings to outlawry, in case of an absconding debtor (*Ten Eyck* v. *Tibbits*, 1 Caines, 426), nor if the debt is collectible in a justice's court only, a transcript filed (*Backus* v. *Shipherd*, 11 Wend. 629), nor in any case a creditor's bill, or proceedings taken analogous thereto; neither is the creditor required to pursue the sheriff, although that officer may have become liable for the debt by reason of failure to collect the execution, or other remissness of duty. (*Leonard* v. *Giddings*, 9 Johns. 355.)

Thus has been defined the means which the creditors shall use, and the extent to which those means shall be employed. The execution is the end and finisher of the law (*Backus* v. *Shipherd*, *supra*); beyond it no effort need be made, or means tried, or extraordinary proceedings of any kind resorted to. (*Ten Eyck* v. *Tibbits*, and other cases, *supra*.) So when the guaranty is made after the death of the principal debtor, the parties must be deemed to have intended collection by those means to which by statute every creditor may resort, and not by any special proceeding made proper by default or remissness of the executor who is charged with distribution. In both cases the law has defined the means which the creditor shall use, and the extent to which they shall be employed. In the first, a judgment at law and execution; in the second, an allowance or judgment by adjustment of the executor in the time and manner prescribed by statute.

This was done in the case before us, and from that moment the demand took its place among other debts due from the

testator. It was then the duty of the executor to proceed with diligence to pay those debts. (2 R. S. 87, § 27.) This duty, coupled with the duty of converting the property of the deceased for that purpose, both enjoined by statute, are at least as conclusive in result, as the exercise of powers intrusted to the sheriff to seize the debtor's property and from it make the money called for by an execution. In the latter case a diligent creditor may obtain a preference, but upon the death of the debtor this advantage ceases, and the statute (2 R. S. 87, § 28) declares, with certain exceptions (not material here), "no preference shall be given in the payment of any debt," and expressly provides that neither "shall the commencement of a suit for the recovery of any debt, or the obtaining of any judgment thereon against the executor or administrator, entitle such debt to any preference over others of the same class."

More than this, it is the duty of the creditor to present the claim or demand to the executor for adjustment and allowance (2 R. S. 88, § 35), and if without doing so, or after the demand shall have been allowed, he sues the executor, he does so at his own risk and cost. (2 R. S. 90, § 41.) Such hazard is not within the contract, nor can it be deemed to have been within the contemplation of the parties to the guaranty. In case of legal proceedings to enforce a claim against a living debtor, the expense of the proceeding, if unsuccessful, would be chargeable against the guarantor, for such expense would have been incurred in due course of law for the purpose of performing the condition on which the guarantor's liability depended. (*Mosher* v. *Hotchkiss*, 3 Abb. Ct. App. Dec. 326; *Taton* v. *Thayer*, 47 How. Pr. 187.) But they would not be chargeable against the executor (*Winne* v. *Van Schaick*, 9 Wend. 448; *Townsend* v. *Lawrence*, *infra*, id. 458; *Potter* v. *Etz*, 5 id. 74), because in judgment of law they were unnecessary, and therefore could not be collected from the guarantor.

The counsel for the appellant refers to 2 R. S. 116, §§ 19, 20 *and* 21, as authority for the position that judgment and execution should have been obtained. These

sections relate to proceedings upon judgment obtained against an executor after trial at law; to a case, therefore, where the executor had disputed the debt and subjected the creditor to the delay of litigation. The object of that statute was to restore to him, as far as possible, the privilege denied him by such refusal. No preference is given; for if, in the discretion of the surrogate, execution is permitted, it is to be paid only from assets applicable thereto under the provisions of the chapter (*supra*), and among others, those which deny preference to such judgment.

The defendant has complied with the statutory scheme for the collection of debts against the estate; he could not be required to do more, and subject himself and, indirectly, his guarantor to unnecessary expenses. Again, the obligation to pursue a " due course of law " in the collection of a demand is satisfied when resort is had to the methods of tribunals intrusted with jurisdiction over the cause of action, and upon whose judgment, execution follows as matter of course. It does not require a creditor to obtain a judgment whose enforcement by execution is subject to the discretion of another court, and then only to the extent to which, if undisputed, it would be paid. (2 R. S. 119, § 32; id. 88, § 32; *Parker's Ex'rs* v. *Gainer's Adm'r,* 17 Wend. 559; *Butler* v. *Hempstead's Adm'rs,* 18 id. 666; *Allen* v. *Bishop's Ex'rs,* 25 id. 414.)

Such is the case here. There was no ground for judgment for the debt was allowed and the property appropriated to its payment, so far as it would go. If further proceedings were needed, either in the discovery of property, or against the executor, they could be pursued under the statute, but in these the defendant would not be a necessary actor, for they would involve other than ordinary remedies. A moment's reference to the law upon this subject, as it stood before the Revised Statutes (*supra*), will show " the mischief and defect " sought to be prevented, and that the remedy appointed by the legislature is advanced by our construction of their words. A creditor was at that time permitted to have an action against administrators or executors, and a judgment and execution "of the goods

of the testator," or "intestate." (Laws of 1787, chap. 19; 1 Greenleaf's Ed. Laws of New York, 333; *Taylor & Otis* v. *Bullen*, 6 Cow. 624; *Dox* v. *Backenstose*, 12 Wend. 542.)

The commencement of a suit at law gave a preference to the claim so prosecuted, over others of the same class, and an executor had, as KENT, chancellor, says in *McKay* v. *Green* (3 Johns. Ch. 56), "vast powers of *preference at law.*" He might pay one debt to the exclusion of another, and even after bill filed for the discovery of assets, a voluntary payment to another creditor in equal degree would have been good. So it was held in *Waring* v. *Danvers* (1 Peere Williams, 295), that if a bill be filed by a simple contract creditor against an executor, and the executor thereupon voluntarily confesses judgment at law to another simple contract creditor, that judgment creditor would be preferred. Indeed, the creditor who came first was first paid, unless the executor or administrator chose to favor another, or confess a judgment for the benefit of all creditors and thus destroy preferences. This practice is referred to by the revisers of the statute of 1830, and section 28, already cited, forbidding preferences, is accompanied by a note, saying : " It " (a confession of judgment by executors) " was probably sanctioned in order to prevent one creditor from grasping all the estate by his vigilance ; " adding, " the better remedy would seem to be to destroy the preferences given to claims prosecuted, and thus the temptation to multiply costs would be removed, while the reason for giving to executors the right of preferring creditors by a judgment would cease."

It is evident, therefore, that the provisions referred to were adopted with a full understanding of their practical effect and for the very purpose of putting an end to such proceedings as the appellant now claims should have been resorted to by the defendant. (*Nichols* v. *Chapman*, 9 Wend. 452 ; *Dox* v. *Backenstose, supra ; Parker's Ex'rs* v. *Gainer's Adm'r, supra.*) If instituted, they would not have availed. If property was found it must go to the representatives, and could be taken from them, not by an execution issued as of course in the consummation of a suit, but only by order of the surrogate, and in his discretion.

(2 R. S. 88, § 32; *Ginochio* v. *Porcella*, 3 Bradf. 277.) Such process is not an ordinary legal remedy to be enforced according to the amount of the judgment, but is founded on neglect on the part of the executors (*Swift* v. *Blair's Ex'x*, 12 Wend. 278; *Butts* v. *Genung*, 5 Paige, 254), and leviable only upon assets found by some other proceedings applicable thereto. (2 R. S. 88, § 32; *Ginochio* v. *Porcella, supra; Thomson* v. *Taylor*, 71 N. Y. 217; *Dox* v. *Backenstose, supra; Parker's Exrs.* v. *Gainer's Admr., supra; Allen* v. *Bishop, supra.*) "Nothing is gained," says NELSON, Ch. J., in the last case cited, "by obtaining a judgment against them" [executors] "beyond the liquidation of the debt."

To the same effect are the other cases, *supra.* Those referred to by the appellant do not meet the case. In *Newell* v. *Fowler, etc., Exr.* (23 Barb. 628), the guaranty was for the collection of a bond and mortgage. Nothing whatever was done toward its enforcement, or the presentation even of the claim thereon to the representatives of the deceased by the principal debtor. *Taylor* v. *Bullen* (*supra*) was decided in 1827, and, therefore, under the law as it stood before the Revised Statutes. The others go upon the rule reiterated in *Craig* v. *Parkis*, already referred to.

Under the facts of this case, whether the plaintiff had proceeded in due course of law — whether he had exhausted the legal remedies, was properly answered by the court. The question might have been submitted to the jury. (*Thomas* v. *Woods, supra.*) The defendant desired it should be, but at the suggestion of the plaintiff the court took the case from them, and at his request made it turn upon the point above discussed. His decision must have the same effect as a like verdict from the jury. (11 *Wend.* 629, *supra.*) We concur with him in the opinion that the defendant was not required to proceed to judgment and execution, and as no other question is presented, it follows that the judgment appealed from was right and should be affirmed.

All concur.

Judgment affirmed.