*In re* HESDRA'S ESTATE.

(*Surrogate's Court, Rockland County, Filed April* 28, 1892.)

1. EXECUTOR—EXECUTION—LEAVE TO ISSUE.

The surrogate cannot permit executions to issue on judgments against an executor (Code Civ. Pro. sec. 1825) when the assets are small, and the claims, several of which are in litigation, large, as he cannot to a measurably certain extent ascertain and determine the debts and claims against the estate, and the sums for the recovery of which an execution should be permitted to issue (Code Civ. Pro. sec. 1826), and when, in any event, the small amount of assets was necessary to meet the considerable expenses attending the litigation of the claims.

2. SAME—REAL ESTATE—EQUITABLE CONVERSION.

Real property directed by the will to be sold for the purpose of administering the estate, is real property within the meaning of section 1823, Code Civ. Pro., providing that "Real property which belonged to a decedent is not bound * * * by a judgment against his executor * * * and is not liable to be sold by virtue of an execution issued on such a judgment, unless the judgment is expressly made by its terms a lien upon specific real property therein described, or expressly directs the sale thereof," and does not become equitably converted into personal property so as to enable the surrogate to grant leave to issue execution on judgments against the executor under Code Civ. Pro. secs. 1825-6, which only authorize execution against personal property.

Applications by creditors who had recovered judgments against decedent's executor, as such, for leave to issue executions thereon. Denied.

Charles A. Dunham and J. A. Henderson, for applicants; Bangs, Stetson, Tracy & MacVeagh, for administrator c. t. a.

WEIANT, S.—These applications are for leave to issue executions under sections 1825 and 1826 of the Code of Civil Procedure, and were heard together, and submitted upon the petition and affidavits. It appears from the petition and papers herein that the testator, Edward D. Hesdra, died about June 6, 1884, leaving a last will and testament, of which he appointed Millard F. Onderdonk the executor. That the said will was

admitted to probate about January 6, 1888, and that letters testamentary thereof were thereupon issued to said Onderdonk. 2 N. Y. Supp. 82.    That in an action brought by the petitioner Dunham against said Onderdonk as such executor a judgment was recovered in the Court of Common Pleas of New York City on November 22, 1890, for the sum of $1,182.24.    That in an action brought by the petitioner Henderson in the same court against said Onderdonk as such executor she recovered judgment against him as such on May 5, 1890, for the sum of $2,380.46.    That thereafter, in a proceeding to remove said executor, a decree was made by this court revoking his letters testamentary, and thereafter, on or about September 18, 1891, upon due application and proceeding, the State Trust Company was appointed administrator with the will annexed of said testator Hesdra—and that said trust company accepted said trust, and entered upon its duties as such.    That neither of said judgments has been paid, nor any part thereof.    It further appears that very little, if any, personal property was left by the testator, and that his estate consisted quite entirely of real estate, the income of which was received by said Onderdonk while acting as such executor, and by the State Trust Company since its appointment as administrator aforesaid.    The affidavit submitted on these applications in behalf of the trust company shows that at the time of the making of the same it had in its possession or control as such administrator of assets but $291.87, which sum was cash.    That the total amount received by it as such administrator, being income from the realty from the time of its appointment, was $3,323.46, out of which it had paid items of expense incurred in the management of the estate property and the administration of the estate the aggregate sum of $3,031.59. That there are claims against the estate aggregating more than $6,000, and several of which are in litigation; that the condition of the affairs of the estate are intricate and unsettled, and in litigation, and that the expenses of managing the estate and administering the same will necessarily be large.    Under this condition of the estate, and upon these facts, I am not convinced

that executions should be permitted to be issued upon these judg- ments. All these claims against the estate appear to be of the same class. A judgment obtained against an executor or admin- istrator as such has no priority of payment over the other debts. Melcher v. Fisk, 4 Redf. Sur. 22; James v. Beesly, id. 236; Schmitz v. Langhaar, 88 N. Y. 503, 2 Rev. St. p. 87, sec. 28. "Where it appears that the assets, after payment of all sums chargeable against them for expenses and for claims entitled to a priority as against the plaintiff, are not or will not be sufficient to pay all the debts, legacies, or other claims of the class to which the plaintiff's claim belongs, the sum directed to be col- lected by the execution shall not exceed the plaintiff's just pro- portion of the assets." Code Civil Pro. section 1826. To com- ply with this provision it is essential that the court should to a measureably certain extent ascertain and determine the debts and claims against an estate. This cannot be done under the proofs which have been submitted to me. Claims against the estate are being litigated to the extent of some thousands of dol- lars. It is thus rendered impracticable for me to determine the sum for the recovery of which an execution should be permitted to issue on either of these judgments. In any event, it must necessarily be very small, and I am not prepared to say that the limited amount of assets in charge of the administrator can, in justice to it and other claimants, be taken or depleted, and ap- plied in payment of these debts, in view of the considerable expenses that seem at all times to be attendant upon this estate because of the interminable stream of litigation that springs from its administration and settlement. Sippel v. Macklin, 2 Dem. Sur. 219; Hauselt v. Gano, 1 Dem. Sur. 36; James v. Beesly, 4 Redf. Sur. 236; Schmitz v. Langhaar, *supra.* It is only personal property that may be considered as assets within these provisions of the Code under consideration. "Real prop- erty which belonged to a decedent is not bound or in any way affected by a judgment against his executor or administrator, and is not liable to be sold by virtue of an execution issued upon such a judgment unless the judgment is expressly made by its

terms a lien upon specific real property therein described, or expressly directs the sale thereof." Code Civil Pro. section 1823. To meet this provision, however, and the proposition that there are no assets that can be judiciously and safely applied in payment of these claims, the respective counsel for the petitioners contend that the whole estate must be regarded as converted into personal property under the provisions of the will authorizing and directing the sale of the realty for the purposes of the administration and distribution of the estate. It does not seem to me that the doctrine of equitable conversion is applicable in giving a construction to these provisions of the Code. The words "real property" in the section above quoted should be given the signification assigned to them in subdivision 6 of section 3343 of the Code, as "coextensive with lands, tenements, and hereditaments." The definition of "real property" found in section 2514, subd. 13, cited by the petitioners' counsel, is not applicable. That applies to matters enacted in the chapter relating specially to Surrogate's Courts.

We find these houses and parcels of land in question constituting substantially the whole of the testator's estate, and "which belonged to the decedent," in the form and of the description stated in the above definition. The statute says such "real property" shall not be sold by virtue of an execution issued upon judgments of the character of these under consideration, and the words are used with the significance of the quoted definition. If an execution were issued, these parcels of real property could not be sold as personal property, and title given as upon a sale of that class of property. It would have to be sold as real property. It seems to me that for the purpose of the enforcement of judgments against executors or administrators by execution, it is the purpose of this restrictive section (1823) of the Code to limit the remedy by execution to reaching such assets as in their form are personal property, known and defined as such under the Code, and to leave the creditor, as to the realty, to his statutory remedies, or to the enforcement of his rights by actions or proceedings in the proper courts. It may well be that, in contem-

plation of the provisions of the will of the testator, and for the purposes of carrying the same into effect, and the administration and distribution of the estate, the realty must be regarded and treated as personalty, but I am of the opinion that such principal is not applicable to this question.    In James v. Beesly, 4 Redf. Sur. 236, the learned surrogate says:    "It is true that in some cases where real estate is directed to be sold by executors it will be regarded as personal property; but not even then is it assets in the hands of an executor."

I have considered the many authorities cited by the counsel for the petitioners touching the doctrine of equitable conversion, and find that all have relation to the administration of the testator's etsate, and the effectual and proper distribution and application of the same to accord with his intention as derived from his will, among those who acquire their rights or interests in his estate by virtue thereof, and not in point on the question here involved.    So long as the real property of the decedent remains in the same condition or status that it had at the time of his death it cannot be reached by an execution such as is sought in this proceeding, but I do not determine how it might be considered after the exercise of the power of sale, and an actual conversion thereby made.    Of course, I am considering this doctrine of equitable conversion as not applicable to the single question under consideration, and under the circumstances disclosed in this matter.    Executions authorized by sections 1825 and 1826 of the Code are such only as can be issued against personal property or assets which are in the possession or under the control of the executors or administrators, and have no relation to real estate.    Lichtenberg v. Herdtfelder, 103 N. Y. 302-306, 8 N. E. Rep. 526.    The form of the execution, as no other is prescribed, is that required by section 1369 of the Code, to satisfy the same out of the personal property, omitting the provision as to real property.    An execution against personal property in the hands of an executor or administrator must require the sheriff to satisfy the judgment out of that property.    Code, section 1371.    The personal property contemplated is such as is actu-

ally such, and not such as is regarded as such in contemplation of a "fiction of law" to carry out or give effect to some equitable principle. The personal property contemplated, out of which the execution is to be satisfied, is that which is susceptible to levy and seizure by virtue thereof. For the purpose of the construction of section 1823 of the Code, I am of the judgment that the lands of the testator retain their character of realty, at least until actually converted. While I have thus disposed of these matters upon the assumption that there was an equitable conversion of the real property under the will of the testator, but not, under the circumstances, subjecting it to execution on these judgments, yet the question as to whether or not such conversion will take place until an actual sale is debatable. Clift v. Moses, 116 N. Y. 144-156, 22 N. E. Rep. 393 et seq.

The applications are accordingly denied, but without costs.