tion of the act under which the defendant was organized (chapter 175, Laws 1883) gives a member the right, with the consent of the association, to make a change in his beneficiary. The act gives the association power to make by-laws for the conduct of its affairs. Section 4. The defendant's by-laws provided that the member desiring to change his beneficiary should execute a certificate before a notary public or other proper officer, "in such form as the executive committee shall prescribe or appoint," stating his name in full, number of certificate, name and place of residence of the beneficiary whom he desires to substitute, name or names of those whom he desires to supersede, and file it with the secretary of the association, who shall, upon its receipt, immediately examine it, and if in due form, duly executed and acknowledged, he shall make the proper entries to show that the change has been made. "No change of beneficiary shall be effectual unless the certificate thereof shall have been filed, examined, and found correct, and the necessary change made in the records of the association, before the receipt of notice of the death of such member." Here Charles Stephan, the insured, executed and acknowledged an assignment before a notary public on the 25th day of October, 1883, and delivered it to the plaintiff. The assignment complied with all the specified requirements of the by-laws, except it did not give the names of the beneficiaries to be superseded. It was delivered to the secretary of the defendant on or previous to November 19, 1883. On that day the secretary wrote to the plaintiff that "the association has to inform you that it duly received a certificate made by Charles Stephan substituting your name as the beneficiary of his certificate of membership in this association. Such certificate is numbered 244." No objection was taken to the form, contents, or omissions of the assignment. The defendant spoke of it as "substituting your name as beneficiary;" and we think that declaration is evidence against the defendant sufficient to support a verdict that the assignment had been duly examined, filed, approved, and the proper entry made, and the change in beneficiary effected. There is no evidence that these acts were not done by the association. Our examination leads to the conclusion that the law does not defeat the plaintiff's right of recovery upon the ground of defects in his paper title, but makes it dependent upon the issues of fact.

As there must be a new trial for the reasons first assigned, we do not deem it needful to examine the other grounds of error alleged, since, upon a new trial, they may not arise. The judgment should be reversed; a new trial granted; costs to abide the event.

LEARNED, P. J., concurs. INGALLS, J., not sitting.

---

## In re HESDRA'S WILL.

(*Supreme Court, General Term, Second Department. June 25, 1888.*)

1. WILLS—PROBATE—PROOF OF EXECUTION.
   Upon proceedings to probate a will, both witnesses being dead, there was evidence that one witness, in whose handwriting the proposed will appeared to be, and whose son was named executor therein, without bond, had, during his lifetime, repeatedly denied its existence, and had at one time so testified. No motive appeared why the witness should either forge the will or deny its execution if genuine; and, tested by decedent's surroundings, it was reasonable, and such a will as would be expected of him. The signatures of testator and the witnesses were clearly proved, and the latter were neighbors and friends of the former, likely to be witnesses to his will. *Held*, that the will should be admitted to probate without any issue *devisavit vel non.* PRATT, J., dissenting.

2. SAME—PROBATE—EVIDENCE—DECLARATIONS OF DECEDENT.
   In such case the admission in evidence of declarations of a deceased witness that decedent had made a will, in reply to his declarations to the contrary, even if erroneous, is not sufficient to reverse the decree for probate.

Appeal from surrogate's court, Rockland county.

This case is an appeal from the decree of the surrogate's court of Rockland county admitting to probate a paper purporting to be the will of Edward D. Hesdra, proposed by Millard F. Onderdonk, who was named as executor therein. The will was contested by Amanda Tordoff, who claimed to be the next of kin, by one Estelle Hesdra, an alleged heir, and by the attorney general for the state, claiming that the deceased had died without heirs. The contestant Tordoff appealed.

Argued before BARNARD, P. J., and PRATT and DYKMAN, JJ.

*B. F. Tracy*, for appellant.    *D. G. Griffin*, for the attorney general.    *Garrett Z. Snider*, for proponent.

BARNARD, P. J. The evidence is voluminous, but the issue finally depends upon the genuineness of the signature of the testator and the witness Frothingham. Edward D. Hesdra, a resident of Rockland county, died in July, 1884. The proposed will was made September 11, 1883. The will was drawn by one John V. Onderdonk, and he is one of the witnesses. The will so entirely accords with the surroundings of the testator that no reasonable hypothesis can be entertained that the will was the invention of John V. Onderdonk; and this view of the case is met by proof that the will was drawn in accordance with the directions of testator, but that it was never signed by him. Proof is given tending to show that John V. Onderdonk so stated the fact to be. This proof is so entirely unnatural that no great weight can be placed upon it. Assuming a man bad enough to forge a will, it is quite incredible that he would have acknowledged the fact. The evidence of his daughter and her husband is also subject to criticism, because it appears that they were not friendly with John V. Onderdonk, and had a suit pending against him, in which serious charges of dishonesty were made both against John V. Onderdonk and his son, the proponent of the will, and the executor named therein. There is something to be accounted for which is more troublesome than that which bears upon the alleged forgery of the will. John V. Onderdonk was an old man, with little business. He had been a builder in his early years. He had been and was friendly with testator until his death. He survived the testator over two years. No steps were taken to prove the will, although he knew that he was dead, and he repeatedly said there was no will; and on one examination upon a contest for administration, in July, 1885, John V. Onderdonk testified that there was no will, or so testified that no other inference was possible if he had been a truthful witness. What explanation is there for this? It must be stated in the outset that John V. Onderdonk takes nothing under the will. His son is executor, and it has given him 10 years to close up the estate, and provided that he should give no bonds. These facts were not sufficient inducements to have John V. Onderdonk act towards proving the will in his life-time, and he lived until February, 1887. Notwithstanding all arguments based upon the evidence given on the trial, the decision that the will is genuine seemed to be well supported. The will must have been the work of the testator so far as respects the terms. No one, much less an inexperienced man, could have invented a will to fit so entirely the family and creed of testator. The signature of Frothingham is proven by members of his family. He was a small dealer in painters' supplies, who had his store near Onderdonk's, and with whom Onderdonk was friendly. Frothingham is dead. This witness is one who would be likely to be called as such by Onderdonk and testator. There is no motive for the forgery by Onderdonk. If it was done to injure any one, the injury does not appear. A Mrs. Tordoff sought to be administratrix upon the basis of intestacy. If the design was to injure her, she and her family got a large share in the estate under the will. Finally, the will and the signature both of testator and Frothingham are produced, and from an examination of them it is evident that the signatures are genuine as to both of these parties. They

are easy, natural, and entirely resemble the admittedly genuine signatures. The proof of the genuineness of the signatures is so strong that no case is made out for issues to be sent to a jury. The most probable explanation of the difficulties of this case seems to be that John V. Onderdonk had some motive for a failure to produce and prove the will. That is not disclosed by the evidence, but his evasive and guarded answers on the administration proceedings seem to warrant such an inference. He was guardian of Mrs. Tordoff's children. If the will was executed, it can be proved against the testimony of the witnesses. *In re Cottrell*, 95 N. Y 329.

The admission of evidence of declarations of John V. Onderdonk to the effect that testator had made a will, in reply to such admissions that he had not, if erroneous, have no sufficient effect in the case to reverse the judgment for that reason. The decree of the surrogate should therefore be affirmed, with costs to all parties out of the estate.

DYKMAN, J., concurs.

PRATT, J., (*dissenting.*) This is an appeal from a decree of the surrogate of Rockland admitting to probate the will of Edward D. Hesdra. The learned surrogate has written an able opinion, reviewing at length the evidence, and giving strong reasons for the decision he has rendered, and the counsel upon both sides have fully discussed the facts and circumstances of the case; so that, in the view we take of the case, a further discussion of the facts seems unnecessary. It is a case involving such a multitude of facts, and the credibility and motives of so many witnesses, that it ought to be submitted to the determination of a jury. The rule is that the proponents of a will, in order to secure its probate, must make satisfactory and convincing proof of the *factum* of the alleged will; and, if the proof comes short of conviction, the paper offered may not be admitted to probate. If the matter is left in doubt, it is proper to send the case to a jury for investigation. We are not unmindful that there are many facts indicating a due execution of this will; yet, taking all the evidence into consideration, while we are not convinced to the contrary, we cannot say the question is not left somewhat in doubt and uncertainty. Much of the testimony is such that the appearance and manner of the witnesses upon the stand becomes an important factor in considering questions of credibility; and, although the surrogate had this opportunity, yet the verdict of a jury might be more instructive to the conscience of the court than the finding of the surrogate. It is not necessary, in this view of the case, to examine the rulings of the surrogate upon the trial, or discuss the questions of law raised by the respective counsel. Decree should be reversed, and trial ordered at circuit before a jury, upon issues to be framed.